No. 30,534.

LOUISE SNYDER, Executrix of the Estate of Phil Neuhart, Deceased, *Appellant*, v. H. D. LANTER et al., *Appellees*.

(11 P. 2d 727.)

Opinion filed June 4, 1932.

*M. A. Gorrill, Henry H. Asher,* both of Lawrence, *Howard E. Payne,* of Olathe, and *E. L. Lynch,* of Woodsfield, Ohio, for the appellant.

*C. L. Randall,* of Olathe, for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover on a promissory note. The defendants answered, setting up a counterclaim, and the question for review is the sufficiency of the evidence to support the counterclaim.

Some time prior to 1920, the record does not disclose the exact

date, Phil Neuhart, now deceased, loaned $3,500 to the defendants, and took their promissory note. The first renewal note shown by the record was dated June 14, 1920, and was in the amount of $2,140. The note was again renewed June 14, 1924, in the amount of $2,640, and is the note upon which this suit is based. The petition was in the usual form and asked judgment for the amount of the note and interest from June 14, 1924, at six per cent. The defendants answered admitting the execution of the note and alleged that the plaintiff was indebted to the defendants in the amount of $633.47, on an account, with interest thereon from May 10, 1919, at the rate of six per cent per annum; that said amount should have been credited on the note at the time of its renewal on June 14, 1924, but by mutual mistake and oversight of all the parties such deduction was not made nor credit taken. Attached to the answer was a copy of the alleged account beginning with June 9, 1914, and extending to and including May 10, 1919. The defendants were lumber merchants, and the account consists of a large number of items showing the purchase and return of lumber and other building material, and a balance due of $633.47. The answer was verified. The plaintiff filed a verified reply denying the allegations of the answer and the correctness of the account, and alleged that the account had been paid. The case was tried to the court and on the trial the defendants produced a ledger sheet showing the account. It showed the account was balanced on May 10, 1919, and that all charges had been fully paid. The defendant, H. D. Lanter, testified to the effect that several credits contained in the account listed as cash should have been credited on the note. On this evidence the court rendered a judgment for the amount of the note less the counterclaim. The plaintiff appeals.

The appellant contends that the evidence was wholly insufficient to support the findings of the trial court.

A succinct statement of the issues before the trial court will aid in determining this question. The answer admitted the execution and the amount due on the note, but alleged an account which showed a balance due of $633.47, and that by mutual mistake this amount was not credited on the note. The reply denied the correctness of the account. The account was closed May 10, 1919. The note was dated June 14, 1924, and was a renewal of a note dated June 14, 1920. The presumption is that on the execution of the

note all preëxisting indebtedness of the appellant to the appellees was settled. (48 C. J. 689, and cases there cited.) The burden was on the appellees. It was necessary for them to establish the correctness of the account and that through mutual mistake of the parties the balance due on the account was not credited on the promissory note nor taken into consideration on the renewal thereof. The ledger sheet offered in evidence by the appellees on its face showed that the account was balanced on May 10, 1919, and there was nothing due the appellees. The appellees by oral testimony attempted to establish that certain credits designated as cash in the ledger account should have been credited on the note. The testimony of the appellee, who was the bookkeeper, is in part as follows:

"Q. Have you given credit on the book for any payment that might have been made? A. The payments that should have been credited on the notes—there never was any cash payment made to my knowledge on the account.

"Q. If they were, they were credited in the books? A. There might be an entry in the book showing a credit on the account that should have gone as a credit on the note.

"Q. I asked you if there were any cash credits in the books. A. Possibly entries, yes—showing cash credit.

"Q. That would mean he paid cash? A. Not necessarily.

"Q. What would it mean? A. It would be he came in and we marked cash on account when possibly it was a credit on the note. You would make an entry on the ledger.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. On the 14th day of January, 1920, did you at the time you signed this note—didn't you know that ledger account existed? A. Yes, sir.

"Q. Didn't you know there was a balance due from Neuhart to you? A. No, sir; I didn't know all the conditions concerning that.

"Q. You were the bookkeeper there? A. Yes, but I had nothing to do with this money that is involved here.

"Q. You knew there was an open account unpaid on the books? A. I was told to square the account and it would be credited on the note.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Didn't you know at the time you signed the note on June 14, 1920, there was a $633 balance as shown by the books due from Neuhart to your firm? A. No, sir; the ledger will show it was ruled out."

The witness further testified that on May 10, 1919, he issued a receipt showing full payment of the account, and further said:

"Q. Just answer the question. On June 14, 1924, when you executed the last note—the one in suit, you knew you had executed this receipt? A. Yes, sir.

"Q. And you also knew you had given credit on the books of the Lanter Lumber Co., on May 10, 1919, for $289.97, and called it cash? A. Yes, sir.

"Q. When you executed the renewal note on June 14, 1924, the old note was handed back to you, wasn't it? A. Yes, sir.

"Q. Did you observe at that time whether these credits appear on that old note? A. No, sir.

"Q. You did not. Have you got that old note? A. No, sir.

"Q. And as far as you know these credits didn't appear on it? A. No, sir.

"THE COURT: Just a minute, Mr. Lanter. I would like to ask you if this total amount, $633.47, which is the total of the exhibit attached to the supplemental answer—without giving regard to any indebtedness on any note—if that sum is due and owing from Phil Neuhart to F. R. Lanter? A. In my opinion it is.

"THE COURT: It represents amounts due for materials sold by F. R. Lanter to Phil Neuhart? A. Yes, sir.

"THE COURT: Was it ever paid? A. Not to my knowledge.

"THE COURT: You say it wasn't paid? A. No, sir; I don't say it wasn't paid.

"THE COURT: Do the books of account show payment? A. The way the interpretation is being put on the books of the account shows it was ruled off.

"MR. ASHER: And it shows exactly the same as every other man's account shows that is ruled off? A. Yes, sir."

It will be noted that there is a difference in the amount of the note on each renewal. No evidence of any kind or character was introduced showing that the account was not taken into consideration by the payee of the note in determining the amount thereof. We think the appellee failed to establish the essential elements of their case and that there is no substantial evidence supporting the allegations of the answer.

The judgment of the district court is reversed and the court is directed to enter judgment in favor of the appellant for the full amount of the promissory note, including the interest accrued thereon.